1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FILED

07 MAR -8 PM 3: 24

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

THE TRAVELERS INDEMNITY CO.
et. al.,

                              Plaintiffs,

        v.

ARENA GROUP 2000, L.P., et. al.,

                              Defendants.

CASE NO: 05-CV-1435 W (CAB)

ORDER GRANTING CRUM & FORSTER'S SUMMARY-JUDGMENT MOTION [DOC. NO. 127]

Pending before the Court is Crum & Forster Specialty Insurance Company's ("Crum & Forster") summary-judgment motion against Arena Group 2000, L.P. ("Arena Group").  The motion raises two issues.  First, whether Arena Group, as an additional insured under Crum & Forster's Retained Amount Policy, is responsible for a $500,000 self-insured retention.  Second, if Arena Group is responsible, whether payments made by Arena Group's other insurers satisfy that obligation.

In its opposition, Arena Group requested a continuance of the motion in order to complete discovery and provide supplemental briefing on whether Crum & Forster is barred from enforcing the retention requirement based on the doctrines of waiver or estoppel.  The Court granted Arena Group's request and continued the hearing.

1    The parties have now filed their supplemental briefs.  The Court **GRANTS**
2  the parties' requests for judicial notice.  Pursuant to Civil Local Rule 7.1(d.1), the
3  Court decides the matter on the papers submitted and without oral argument.  For
4  the reasons stated below, the Court **GRANTS** Crum & Forster's summary-
5  judgment motion.

6  I.    BACKGROUND

7    This insurance coverage dispute arises from two San Diego Superior Court
8  personal-injury actions filed against Arena Group.  According to the superior court
9  complaints, on February 22, 2003, Daniel Doll and Shelby Olerich-Snow left the
10 Black Angus restaurant near the San Diego Sports Arena (the "Sports Arena").
11 While walking near the restaurant, Doll and Snow suffered severe personal injuries
12 when a two-ton marquee sign fell on them.  Doll and Snow filed separate state-court
13 actions against Arena Group and a host of other defendants.

14   Arena Group tendered the claim to its primary and excess carriers, Allied
15 Insurance Company ("Allied"), Travelers Property Casualty Company of America
16 ("Travelers"), and The Travelers Indemnity Company (as successor in interest by
17 merger to Gulf Insurance Company and Gulf Underwriters Insurance
18 Company)("Travelers Indemnity").  Arena Group later tendered the claim to Crum
19 & Forster, which had issued a Retained Amount Policy to American Restaurant
20 Group, Inc. (the "Policy").  Arena Group is covered through a Blanket Additional
21 Insured endorsement, which states:

22       Blanket Additional Insured as respects all persons, trustees, estates,
23       entities, or organizations, which the Insured has agreed under a written
         contract to name as Additional Insured.
24
25 (Crum & Forster's Index of Exhibits ("C&F Index"), Ex. 1 at 44.)  The limit of
26 liability is $1,000,000 per occurrence, subject to a $500,000 retention (also referred
27 to as the "Retained Amount") per occurrence.  (Id. at 7.)  Crum & Forster agreed to
28 participate in Arena Group's defense, subject to a full reservation of rights.

1    On November 22, 2005, the lawsuits settled for $11,000,000. Allied,
2    Travelers, and Travelers Indemnity contributed $10 million, and Crum & Forster
3    contributed $500,000. Under the terms of the settlement agreement, the remaining
4    $500,000 will be paid either by Arena Group or Crum & Forster depending on the
5    resolution of whether Arena Group is responsible for the Policy's retention. (See
6    C&F's Index, Ex.19 at 261.)

7    On November 28, 2005, pursuant to the settlement agreement, Arena Group
8    filed its Third-Party Complaint against Crum & Forster for declaratory relief. On
9    September 19, 2006, Crum & Forster filed this motion seeking a determination that
10   Arena Group is responsible for the $500,000 retention.[1]

11   ## II.    LEGAL STANDARD

12       Summary judgment is appropriate under Rule 56(c) where the moving party
13   demonstrates the absence of a genuine issue of material fact and entitlement to
14   judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,
15   477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive
16   law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477
17   U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A
18   dispute about a material fact is genuine if "the evidence is such that a reasonable
19   jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

20       A party seeking summary judgment always bears the initial burden of
21   establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at
22   323. The moving party can satisfy this burden in two ways: (1) by presenting
23   evidence that negates an essential element of the nonmoving party's case; or (2) by
24   demonstrating that the nonmoving party failed to make a showing sufficient to
25   establish an element essential to that party's case on which that party will bear the
26
27   _____
     [1] On October 6, 2006, Arena Group also filed a summary-judgment motion seeking a
28   determination that it was not responsible for the $500,000 retention. On December 6, 2006, the
     Court denied Arena Goup's motion.

1  burden of proof at trial. Id. at 322–23. "Disputes over irrelevant or unnecessary

2  facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac.

3  Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

4      "The district court may limit its review to the documents submitted for the

5  purpose of summary judgment and those parts of the record specifically referenced

6  therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th

7  Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a

8  genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996)

9  (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)). If the

10  moving party fails to discharge this initial burden, summary judgment must be

11  denied and the court need not consider the nonmoving party's evidence. Adickes v.

12  S.H. Kress & Co., 398 U.S. 144, 159–60 (1970).

13      If the moving party meets this initial burden, the nonmoving party cannot

14  defeat summary judgment merely by demonstrating "that there is some metaphysical

15  doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

16  Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d

17  1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence

18  of a scintilla of evidence in support of the nonmoving party's position is not

19  sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by

20  her own affidavits, or by 'the depositions, answers to interrogatories, and admissions

21  on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

22  Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

23      When making this determination, the court must view all inferences drawn

24  from the underlying facts in the light most favorable to the nonmoving party. See

25  Matsushita, 475 U.S. at 587. "Credibility determinations, the weighing of evidence,

26  and the drawing of legitimate inferences from the facts are jury functions, not those

27  of a judge, [when] he [or she] is ruling on a motion for summary judgment."

28  Anderson, 477 U.S. at 255.

1    III.    DISCUSSION

2            A.      California Insurance Law.

3            The parties agree that California law governs the interpretation of Crum &

4    Forster's Policy.

5            Under California law, the interpretation of an insurance policy is governed by

6    the ordinary rules of contract interpretation. Palmer v. Truck Ins. Exchange, 21

7    Cal.4th 1109, 1115 (1999). The fundamental goal in interpreting an insurance

8    policy is to ascertain the parties' mutual intentions. Vons Cos., Inc. v. United States

9    Fire Ins. Co., 78 Cal.App.4th 52, 58 (2000). Where possible, those intentions

10   should be inferred solely from the policy's written terms. AIU Ins. Co. v. FMC Corp.

11   51Cal.3d 807, 822 (1990). Thus, policy language that is clear and explicit governs.

12   Id.

13           A policy term is ambiguous when susceptible to two or more reasonable

14   constructions. EMMI Inc. v. Zurich American Ins. Co., 32 Cal.4th 465, 470 (2004).

15   Courts, therefore, will not adopt "a strained or absurd interpretation in order to

16   create an ambiguity where none exists." Bay Cities Paving & Grading, Inc., v.

17   Lawyers' Mutual Ins. Co., 5 Cal. 4th 854, 867 (1993). And ambiguity cannot be

18   found in the abstract. Id. Rather, the "proper question is whether the word is

19   ambiguous in the context of *this* policy and the circumstances of *this* case." Id. at

20   868. Where an ambiguity exists, however, it should be resolved against the insurer.

21   EMMI, Inc., 32 Cal.4th at 470–471.

22           B.      Under the Plain Language of the Policy, Additional Insureds

23                   are Responsible for the Retained Amount.

24           The first issue is whether Arena Group, as an additional insured, is responsible

25   for the Retained Amount.

26           The Policy's first page states that the "**Retained Amount** is the responsibility

27   of the **Insured** and is to be paid from the **Insured's** own account." (C&F's Index,

28

                                            - 5 -                          05cv1435w

1  Ex. 1 at 9.[2])  This requirement is repeated in Section VII-K regarding "Other

2  Insurance":

3          The **Insured** shall pay from its own account all amounts within the

4          **Retained Amount** as defined in this policy.

5  (Id. at 27.)

6          The Insured's responsibility for the retention is also reflected in the section

7  regarding claims expenses.  This section states that the "**Insured** shall pay **Claims**

8  **Expense** within the **Retained Amount** which relates to the defense of claims or

9  **Suits**."  (C&F's Index, Ex. 1 at 11.)

10         Because the Policy's plain language obligates the "**Insured**" to pay the

11 retention, Arena Group is responsible for paying the Retained Amount if it – as an

12 additional insured – is an "**Insured**" under the Policy.  The Policy's Insuring

13 Agreement is pertinent to this issue.  It states:

14         Subject to the other provisions of this policy, the Company will pay on
           behalf of the **Insured** that portion of the **Ultimate Net Loss**, in excess
15         of the **Retained Amount**, which the **Insured** has become legally
           obligated to pay as damages and related **Claims Expense** because of
16         **Bodily Injury, Property Damage, Personal Injury** or **Advertising**
           **Injury** to which this insurance applies.
17

18

19 (C&F's Index, Ex. 1 at 11.)  If not an "**Insured**", Arena Group would not be entitled

20 to coverage.  Neither party argues that Arena Group is not entitled to coverage.  The

21 Court, therefore, concludes that Arena Group is an "**Insured**."

22         Although Arena Group does not dispute that it is an "**Insured**" under the

23 Insuring Agreement, Arena Group argues that the term is ambiguous because in

24 various provisions it is unclear whether "**Insured**" refers only to the "**Named**

25 **Insured**" or to "any insured, including the Additional Insureds."  (AG's Oppo. at

26

27 _____

          [2]The Policy provides that "[w]ords and phrases that appear in **boldface** (except for titles or
28 captions) have special meeting."  (C&F's Index, Ex. 1 at 9.)  Accordingly, quotes from the Policy will
   include the boldface type.

                                          - 6 -                                05cv1435w

1   10:5–10.)  Because ambiguities are resolved against the insurer, Arena Group

2   contends that the term "**Insured**" should not include additional insureds when used

3   in provisions concerning the obligation to pay the retention.

4         But contrary to Arena Group's argument, the Policy clearly identifies when a

5   right or obligation applies only to the Named Insured.  For example, under Section

6   VII-C, regarding "Cancellation", the Policy provides that only the "**Named Insured**"

7   may cancel the Policy.  (C&F's Index, Ex. 1 at 25.)  Section VI-A provides that the

8   "**Named Insured**" is responsible for designating a claims servicing organization for

9   "claims or Suits seeking damages against an **Insured** . . . ."  (<u>Id.</u> at 24.)  And Section

10   VII-M clarifies that the "**Named Insured**" is responsible for paying any outstanding

11   premium.  (<u>Id.</u> at 28.)  These provisions confirm that if *only* the Named Insured were

12   responsible for the retention, the Policy would *not* state that the "**Insured** shall pay . .

13   . all amounts within the **Retained Amount**. . . ."  (<u>Id.</u> at 9, 27.)

14         Furthermore, important in evaluating whether a term is ambiguous are "the

15   requirements of reasonableness and context. . . . An insurance policy provision is

16   ambiguous when it is capable of two or more constructions both of which are

17   *reasonable*."  <u>Bay Cities Paving & Grading, Inc.</u>, 5 Cal. 4th at 867.  Arena Group's

18   interpretation, however, requires two separate and inconsistent definitions of an

19   "**Insured**": one that includes additional insureds (for purposes of coverage); and one

20   excluding additional insureds (for purposes of the Retained Amount).  But "[w]ords

21   used in a certain sense in one part of a contract are deemed to have been used in the

22   same sense elsewhere."  <u>ML Direct, Inc. v. TIG Specialty Ins., Co.</u>, 79 Cal.App.4th

23   137, 142 (2000) (citing <u>Levi Strauss & Co. v. Aetna Casualty & Surety Co.</u>, 184

24   Cal.App.3d 1479, 1486 (1986)).  Accordingly, the Court finds that Arena Group's

25   interpretation is  unreasonable.  Because Arena Group is an "**Insured**", it is

26   responsible for the retention.

27

28

1  **C.    Arena Group's Other Insurers' Settlement Payments do not**
2      **Satisfy the Retained Amount Requirement.**

3      Arena Group contends that even if responsible for the $500,000 retention, it
4  has satisfied that obligation.  This argument is based on the Policy's definition of
5  Retained Amount, which provides:

6      The **Retained Amount** means the amount retained by the **Insured** or
7      the amount of underlying insurance for damages and **Claims Expense**
    arising out of each **Occurrence** for which coverage is afforded by this
8      policy.  The **Retained Amount** is shown in the Declarations.

9  (C&F's Index, Ex. 1 at 24.)  According to Arena Group, this definition contemplates
10  "at least two potential sources of funding for the Retained Amount," one of which
11  includes underlying insurance.  (AG's Oppo. at 7:8–11.)  Thus, Arena Group argues
12  that payments by its primary and excess carriers satisfy the Retained Amount.

13      California law requires that the "whole of a contract is to be taken together, so
14  as to give effect to every part, if reasonably practicable, each clause helping to
15  interpret the other."  Cal. Civ. Code § 1641; see also  Bay Cities Paving & Grading,
16  Inc., 5 Cal. 4th at 867.  Arena Group's argument, however, fails to attribute any
17  meaning to the definition's second sentence, which states that the "**Retained**
18  **Amount** is shown in the **Declarations**."  That sentence clarifies that whether the
19  Retained Amount is "the amount retained by the **Insured**" or "the amount of
20  underlying insurance" depends on what is identified on the Declarations.  Here, the
21  Declarations lists $500,000 as the Retained Amount, and does not list any underlying
22  insurance policies.  Accordingly, under this Policy, the Retained Amount consists of
23  "the amount retained by the **Insured**" – i.e., $500,000 – and not the amount of
24  underlying insurance.

25      More importantly, a policy may prohibit the use of other insurance to satisfy a
26  retention by including a policy provision requiring the insured to personally pay the
27  retained amount.  See Vons Cos., Inc., 78 Cal.App.4th at 62, 64.  Here, subsection
28  K.1, regarding "Other Insurance", provides that the "**Insured** shall pay from its own

1    account all amounts within the **Retained Amount** . . . ."  (C&F's Index, Ex. 1 at 27--
2    28.)  This obligation is also stated on the Policy's first page: "The **Retained Amount**
3    is the responsibility of the **Insured** and is to be paid from the **Insured's** own
4    account."  (Id. at 9.)  Because the Policy unambiguously requires the Insured to pay
5    the Retained Amount from its "own account," the Court concludes that payments
6    made by Arena Group's other insurers to Doll and Snow do not satisfy the retention.

7         **D.    Crum & Forster has not Waived and is not Estopped from**
8              **Enforcing the Retained Amount Requirement.**

9         In its supplemental brief, Arena Group argues that Crum & Forster's motion
10   should be denied under the doctrines of waiver and estoppel.  The Court disagrees.

11        **1.    _Crum & Forster did not waive the retention._**

12        Waiver is "the intentional relinquishment of a known right after full
13   knowledge of the facts."  Waller v. Truck Ins. Exchange, 11 Cal.4th 1, 31 (1995).
14   The "pivotal issue in a claim of waiver is the intention of the party who allegedly
15   relinquished the known legal right."  Old Republic Ins. Co. v. FSR Brokerage, Inc.,
16   80 Cal.App.4th 666, 678 (2000).  The party claiming a waiver bears the burden of
17   proof by clear and convincing evidence "that does not leave the matter to
18   speculation, and 'doubtful cases will be decided against a waiver.' "  Id.

19        Subsection VI-B of the Policy contemplates the following mechanism for
20   handling claims expenses within the Retained Amount:

21        
22        The **Named Insured** will maintain a specific fund in an amount and
           manner to be determined by the mutual agreement between the **Named**
23        **Insured**, the Claims Servicing Organization designated in the
           Declarations and the Company for the payment of all claims and **Claims**
24        **Expense** within the **Retained Amount** portion of claims or **Suits**
           seeking damages against an **Insured** to which this policy may apply.
25

26   (C&F's Index, Ex. 1 at 24.)  Arena Group contends that Crum & Forster failed to
27   take any steps to enforce this provision.  (Supp. Brief, at 2:20–3:4.)  Arena Group
28

1  further argues that Crum & Forster's inaction establishes an intent to waive the right

2  to require the Named Insured to set-up and maintain the funding mechanism.

3      Assuming for the sake of argument that Crum & Forster waived the funding

4  mechanism, the Court fails to understand – and Arena Group does not explain – how

5  that waiver relieves Arena Group of the retention.  As explained above, under the

6  Policy's Insuring Agreement, Arena Group must pay the retention before Crum &

7  Forster's coverage obligation is triggered.  Additionally, other provisions explicitly

8  state that Arena Group must pay the retention from its own account.  Thus, to avoid

9  summary judgment, Arena Group must establish that Crum & Forster waived the

10 provisions pertaining to the Retained Amount obligation, not the funding

11 mechanism.  The undisputed evidence, however, establishes the opposite.

12      Arena Group first requested a copy of the Crum & Forster Policy in early

13 March 2005.  (Susan Field Reply Decl., ¶ 3.)  On March 7, Crum & Forster's

14 attorney sent Arena Group a copy of the Policy.  (Id., Ex. A.)  Three weeks later,

15 Arena Group tendered its defense and indemnity to Crum & Forster.  (AG's

16 Response to C&F's Undisputed Facts ("AG's Response"), No. 21; C&F Index, Ex.

17 13.)

18      On June 28, 2005, Crum & Forster responded to Arena Group's tender with a

19 reservation-of-rights letter stating that the Policy's liability coverage was subject to "a

20 $500,000 Each Occurrence retention . . . ."  (AG's Response, No. 24; C&F Index,

21 Ex. 14 at 229.)  The letter also states:

22      This Policy has a Retained Limit of $500,000 and the policy
       applies only in excess of a retained amount.  To the extent that Arena
23     Group is an insured under the Policy, Arena Group itself is obligated to
       pay the first $500,000 before [Crum & Forster's] obligation attaches and
24     that amount may not be paid by other insurers.
25

26 (C&F Index, Ex. 14 at 234.)

27      As the party claiming a waiver, Arena Group bears the burden of proof by clear

28 and convincing evidence "that does not leave the matter to speculation, and

'doubtful cases will be decided against a waiver.' " Old Republic, 80 Cal.App.4th at

- 10 -

1    678.  Not only has Arena Group failed to identify evidence suggesting that Crum &
2    Forster intended to waive the retention, but the evidence establishes that Crum &
3    Forster intended to enforce the retention.  Accordingly, whether or not Crum &
4    Forster waived the funding mechanism – an issue the Court need not resolve – Arena
5    Group is liable for paying the retention from its own account.

6           **2.    *Crum & Forster is not estopped from enforcing the retention.***

7           "Estoppel is applicable where the conduct of one side has induced the other to
8    take such a position that it would be injured if the first should be permitted to
9    repudiate its acts."  Old Republic, 80 Cal.App.4th at 678.  While estoppel and waiver
10   are sometimes used interchangeably in the insurance context, estoppel differs from
11   waiver because it requires proof of the insured's detrimental reliance.  Waller, 11
12   Cal.4th at 33.

13          Arena Group's estoppel argument is also based on subsection VI-B.  Arena
14   Group argues that had Crum & Forster required the Named Insured to establish the
15   funding mechanism, Arena Group would have been "insulated" from paying the
16   retention.  (AG's Supp. Brief at 5:1–4.)  Arena Group, therefore, argues that because
17   Crum & Forster failed to enforce subsection VI-B and failed to notify Insureds that
18   the fund was not established, "Crum & Forster is estopped to assert any such retained
19   amount requirements against Arena."  (Id.)

20          Arena Group's attempt to establish detrimental reliance by asserting that it
21   would have been "insulated" from the retention is unavailing.  Arena Group appears
22   to assume that by requiring the Named Insured to establish the funding mechanism,
23   subsection VI-B eliminates the Insured's obligation to pay the retention, thereby
24   "insulating" Arena Group from the obligation.  But as addressed above, the Policy's
25   plain language unambiguously requires the Insured to pay the retention, and to do so
26   from "its *own* account."  Thus, even if the funding mechanism had been established,
27   Arena Group would still have to pay the retention, and would not be "insulated"
28   from the Retained Amount.

1    Accordingly, Arena Group cannot establish that it was injured or detrimentally

2  relied on Crum & Forster's alleged failure to require the Named Insured to establish

3  the funding mechanism.[3]

4  **IV.    CONCLUSION AND ORDER**

5    For the reasons discussed above, the Court **GRANTS** Crum & Forster's

6  summary-judgment motion.

7

8    **IT IS SO ORDERED.**

9

10  **DATE: March 7, 2007**

11                                              HON. THOMAS J. WHELAN
                                                United States District Court
12                                              Southern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    [3] It is unclear whether Arena Group is arguing that waiver and estoppel are two separate and
independent grounds for denying summary judgment, or whether Arena Group has combined the
28  doctrines and is arguing that Crum & Forster is estopped from enforcing the retention because it
waived the funding mechanism. Arena Group's argument is unavailing under either approach because
it is responsible for paying the retention from its own account.