UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE TRAVELERS INDEMNITY CO. et. al.,<br><br>     vs.                            Plaintiffs,<br><br>ARENA GROUP 2000, L.P., et. al.,<br><br>                              Defendants. | CASE NO: 05-CV-1435W(CAB)<br><br>**ORDER DENYING DANIEL DOLL'S MOTION FOR LEAVE TO INTERVENE TO REQUEST UNDERTAKING ON APPEAL [DOC. NO. 213]** |

On March 8, 2007, this Court issued an order granting Crum & Forster's summary-judgment motion against Arena Group 2000, L.P. The order was based on the Court's finding that Arena Group, an additional insured under Crum & Forster's Retained Amount Policy, is responsible for a $500,000 retention.

On April 18, 2007, Arena Group appealed the Court's March 8, 2007 ruling. On June 27, 2007, Daniel Doll filed the pending motion for leave to intervene to request an undertaking on Arena Group's appeal.

The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1). For the reasons stated below, the Court **DENIES** Doll's motion.

## I. BACKGROUND

On February 22, 2003, Daniel Doll and Shelby Olerich-Snow left the Black Angus restaurant near the San Diego Sports Arena and walked under a large marquee sign that collapsed on them without warning. Both Doll and Snow suffered severe personal injuries as a result and filed separate state-court actions against Arena Group and a host of other defendants.

Arena Group tendered the claim to its various insurers, including Crum & Forster, which had issued a Retained Amount Policy to American Restaurant Group, Inc. Arena Group is covered as an additional insured under the policy. The limit of liability is $1,000,000 per occurrence, subject to a $500,000 retention. Crum & Forster agreed to participate in Arena Group's defense. However, the two parties disagreed on whether Arena Group must satisfy the policy's $500,000 retention.

Eventually, the underlying personal-injury lawsuit settled for $11,000,000. Arena Group's primary and excess carriers, among others, contributed $10 million. Crum & Forster contributed $500,000. The Settlement Agreement between Doll, Arena Group and Crum & Forster addresses who is responsible for paying the remaining $500,000. Under Settlement Agreement's terms, Arena Group and Crum & Forster agreed to "litigate solely the issue of whether Arena Group is obligated . . . to pay the" $500,000 retention. (Doll's Ex. 1, ¶ 12.3.) "In the event of a final and non-appealable judgment determining that Arena Group is obligated to pay," Arena Group must pay Doll the remaining $500,000 in various installments. (Id.) If, on the other hand, Arena Group is found not to be obligated for the retention, Crum & Forster must pay the balance.

On November 28, 2005, Arena Group filed a Third-Party Complaint against Crum & Forster seeking a declaration regarding the parties' respective rights and obligations under the Retained Amount Policy. Thereafter, Arena Group and Crum & Forster filed cross-motions for summary judgment seeking a determination of whether Arena Group is responsible for the retention.

1     On March 8, 2007, this Court issued an order granting Crum & Forster's
2 motion and finding that Arena Group is responsible for the retention. On April 18,
3 2007, Arena Group filed a Notice of Appeal. On June 27, 2007, Daniel Doll filed
4 this motion. He requests that the Court grant him leave to intervene, and require
5 Arena Group to provide a supersedeas bond safeguarding his interest in the
6 underlying Settlement Agreement.

7

8 **II.   LEGAL STANDARD**

9     Rule 24(a)(2) permits anyone to intervene who is "so situated that the
10 disposition of the action may as a practical matter impair or impede the applicant's
11 ability to protect that interest, unless the applicant's interest is adequately
12 represented by existing parties." Fed. R. Civ. P. 24(a)(2). The Ninth Circuit applies
13 a four-prong test when weighing a Rule 24(a)(2) intervention motion:

> (1) the application for intervention must be timely; (2) the applicant must have a 'significant protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

19 Southwest Center for Biological Diversity v. Berg, 268 F.3d 810, 817-18 (9th Cir.
20 2001). In applying this standard, courts should broadly construe the rule in the
21 proposed intervenor's favor. U.S. v. City of Los Angeles, 288 F.3d 391, 397-98 (9th
22 Cir. 2002). However, the applicant "bears the burden of showing that *all* the
23 requirements for intervention have been met." U.S. v. Alisal Water Corp., 370 F.3d
24 915, 919 (9th Cir. 2004) (emphasis in original).

25     With respect to the fourth element – adequate representation – courts should
26 consider several factors. Specifically, an applicant is adequately represented if "(1)
27 the interests of a present party to the suit are such that it will undoubtedly make all
28 of the intervenor's arguments; (2) the present party is capable of and willing to make

1 such arguments; and (3) the intervenor would not offer any necessary element to the
2 proceedings that the other parties would neglect." County of Fresno v. Andrus, 622
3 F.2d 436, 438-39 (9th Cir. 1980) (citing Blake v. Pallan, 554 F.2d 947, 954-55 (9th
4 Cir. 1977)); United States v. City of Los Angeles, 288 F.3d 391, 398 (9th Cir. 2002).

**III.   DISCUSSION**

    **A.   Doll does not have a significant protectable interest.**

An applicant has a significantly protectable interest in the subject of the litigation "if the interest is protected by law and there is a relationship between the legally protected interest and the plaintiff's claims. [Citations omitted.]" Alisal Water Corp., 370 F.3d at 919.  In order to trigger a right to intervene, "an economic interest must be concrete and related to the underlying subject matter of the action." Id.

Here, Doll asserts an economic interest in the litigation.  Although he does not specifically identify the interest, it appears to be his contractual right under the Settlement Agreement to receive $500,000 from Arena Group "in the event of a ***final and non-appealable*** judgment determining that [Arena Group] is obligated to pay the SIR. . . ." (Doll's Ex. 1, ¶ 12.3, emphasis added.)  Doll argues that the Court's March 8, 2007 order constitutes a "final and non-appealable order" that triggers Arena Group's obligation to pay, presumably giving rise to Dolls' interest.  Doll further asserts that Arena Group does not intend to pay, and thus seeks intervention to protect his contractual right.  The Court is not persuaded by Doll's argument.

The Settlement Agreement's use of the term "final and non-appealable" is clear and unambiguous.  It means that Doll's contractual right to receive payment ripens when the judgment is no longer subject to appeal.  Because Arena Group (either now or later) has the right to seek appellate review of this Court's March 8,

2007 order, Doll does not yet have an economic interest against Arena Group.

Moreover, the Court agrees with Arena Group that the cases Doll relies upon do not support intervention in this case. In each case Doll cites, the litigation had the potential of directly impacting the intervenor's right to a *specific* fund. For example, in <u>Security Insurance Co. of Hartford v. Schipporeit, Inc.</u>, 69 F.3d 1377 (7th Cir. 1995), the litigation had the potential of eliminating the availability of insurance proceeds. In contrast, here, the litigation will determine which party is responsible for paying Doll.[1]

### B. <u>Doll has not established that his interests are not being adequately protected.</u>

Even if Doll established a significant protectable interest, he has failed to establish that his interests are not being adequately represented.

Doll concedes that before this Court issued the March 8, 2007 order, his interests were being adequately protected: "Until now, his interest have been adequately protected." (Doll's P&A, p.4:6–7.) Doll argues, however, that because of the order, "the interests of the parties have become adverse." (<u>Id.</u>, p.4:12.) The Court disagrees.

Doll's argument assumes that Arena Group's interests have changed. Not only has Doll failed to cite evidence supporting this contention, but it also makes no sense. Before the March 8, 2007 order, Arena Group's interest was in convincing this Court that it is not responsible for the $500,000 retention. Following that order, Arena Group's interest remains the same: convincing the Ninth Circuit that

---

[1] To the extent Doll's interest is in pursuing an undertaking, the Court also finds that he is not entitled to an undertaking under Federal Rule of Civil Procedure 62(d). By its terms, Rule 62(d) applies in the case of a money judgment. Doll does not have a money judgment against Arena Group. Rather, he has a contractual right to receive $500,000 from either Arena Group or Crum & Forester, once a "final and non-appealable" judgment has been entered. (<u>See</u>, Doll's Reply, 5:4 (recognizing that Arena Group has a "contractual obligation.").)

it is not responsible for the retention. Accordingly, to the extent Doll's and Arena Group's interests were aligned before the March 8, 2007 order, they remain aligned.

### IV.  CONCLUSION AND ORDER

For the reasons discussed above, the Court **DENIES** Daniel Doll's motion to intervene [Doc. No. 213].

**IT IS SO ORDERED.**

DATED:  September 18, 2007

_____
Hon. Thomas J. Whelan
United States District Judge